IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DANA KEITH BUTCHER AND ] <br> EDWARD JONES, ] <br> ] <br> *Plaintiffs*, ] <br> ] <br> v. ] <br> ] <br> TSWS, INC. D/B/A POT-O-GOLD, ] <br> ] <br> *Defendant.* ] <br> _____] | CASE NO. 4:10-cv-1376 <br> <br> JURY TRIAL |

**PLAINTIFFS' RESPONSE TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**1.    INTRODUCTION.**

To prevail on its Motor Carrier Act exemption defense, Pot-O-Gold must prove it was likely Plaintiffs would be called upon to participate in interstate transportation.  However, neither Plaintiffs nor any of their Houston co-workers were *ever* called upon to participate in interstate transportation.  In fact, Pot-O-Gold told Plaintiffs they would *never* drive interstate routes because they were needed to tend to Pot-O-Gold's permanent Houston toilet operations.  Even in locations outside of Houston where pump truck drivers have traveled interstate, only drivers who volunteer (or separate long-haul drivers) actually make the runs.  Because they drove fixed, intrastate portable toilet service routes limited to the Houston area, Plaintiffs were not exempt from the FLSA's overtime provisions.

**2.    FACTS.**

Dana Butcher and Edward Jones ("Plaintiffs") worked for TSWS, Inc. d/b/a Pot-O-Gold ("Pot-O-Gold" or "Defendants") as Pump Truck Drivers.  *See* Exhibit 1, Declaration of Dana

Butcher (Butcher Dec.) at ¶¶ 1-2; Exhibit 2, Declaration of Edward Jones (Jones Dec.) at ¶¶ 1-2. As Pump Truck Drivers, Plaintiffs serviced portable toilets.  Butcher Dec. at ¶ ¶ 6-7; Jones Dec. at ¶¶ 6-7.  Plaintiffs began their workdays by picking up a pump truck at Pot-O-Gold's storage yard and office in Rosharon, Texas.  Butcher Dec. at ¶ 5; Jones Dec. at ¶ 6. To service a toilet, they stuck a hose connected to the truck's tank down the portable toilet to pump out the waste. Butcher Dec. at ¶ 6, Jones Dec. ¶ 7.  Plaintiffs cleaned the inside of the toilet housing, the toilet seat, and the urinal and then proceeded to the next toilet along their route.  Butcher Dec. at ¶ 6; Jones Dec. at ¶ 6.  Plaintiffs routes were all in the greater Houston area   Butcher Dec. at ¶ 4; Jones Dec. at ¶ 4..

Pot-O-Gold told Plaintiffs they would never drive interstate -, even if there were storms or disasters - because Pot-O-Gold has dedicated out of state drivers and needs pump truck drivers in Houston to cover permanent routes in Houston.  Jones Dec. at ¶ 3; *see also* Butcher Dec. at ¶ 3; Exhibit 3, Deposition of Leonard Derr (Derr Depo.) at p. 27, l. 24 – p. 28, l. 9; p. 30, l. 8-20; Exhibit 4, Deposition of Erin Shelton (Shelton Depo.) at p. 33, l. 3-9.  Although Pot-O-Gold has operated in Houston for several years (*See* Doc. 17-2 at p. 8) no Houston-based Pump Truck Driver ("Houston Pump Truck Driver"), including Plaintiffs, ever made an interstate trip.  *See* Exhibit 5, Deposition of Henry Ray (Ray Depo.) at p. 16, l. 13 – p. 17, l. 1; *see also* Butcher Dec. at ¶ 9; Jones Dec. at ¶ 11.  At the time Plaintiffs were employed, Pot-O-Gold employed five Houston Pump Truck Drivers.  Derr Depo. at p. 23, l. 9-11.

Plaintiffs had fixed toilet pumping routes in the Houston area.  Butcher Dec. at ¶ 4; Jones Dec. at ¶ 4. Pot-O-Gold's Houston managers, Henry Ray and Lynn Derr, assigned these routes to Plaintiffs.  Shelton Depo. at p. 42, l. 5 – p. 43, l. 1; *see also* Ray Depo. at p. 22, l. 8-10; Derr Depo. at p. 18, l. 21 – p. 19, l. 1.

2

On a few occasions, Butcher drove a Chevy 1500 pickup truck for Pot-O-Gold. Butcher Dec. at ¶ 8. Jones drove this truck for the entire week of October 12-18, 2009. Jones Dec. at ¶ 10. He worked more than 40 hours that week *See* Exhibit 7, Time Sheet. This truck was a "1-ton" truck. Ray Depo. at p. 37, l. 8-19.

New toilets are delivered to Pot-O-Gold's storage yard in several plastic pieces, nuts, bolts and fasteners. Jones Dec. at ¶ 8; *see also* Shelton Depo. at p. 37, l. 16 – p. 38, l. 17; Derr Depo. at p. 33, l. 25 – p. 34, l. 5. Jones and other workers built the portable toilets from these parts "from the ground up" until they were ready to use. Jones Dec. at ¶ 8; *see also* Derr Depo. at p. 35, l. 1-20. Jones also patched holes in toilet walls with plastic patches cut from old ones. *Id.* Jones Dec. at ¶ 8.

Pot-O-Gold entered the Houston market by picking up disaster relief work associated with Hurricane Ike in 2008. Doc. 17-2, at p. 8; Shelton Depo. at p. 23, l. 20 – 24, l. 24. After the storm work died down, Pot-O-Gold "decided to plant seed," in Houston to establish permanent operations here. Shelton Depo. at p. 23, l. 20 – 24, l. 24. Plaintiffs were employed during these permanent, rather than emergency, operations. Ray Depo. at p. 24, l. 9 – p. 25, l. 2; Exhibit 6, Pot-O-Gold's Route Sheets. During permanent operations, Pot-O-Gold services toilets for local, established customers, and circulates toilets between local job sites and the storage yard in Rosharon, Texas. Ray Depo. at p. 25, l. 3-12.

Pot-O-Gold initially paid Plaintiffs by the hour and paid overtime when they worked in excess of forty hours per week. Butcher Dec. at ¶ 10; Jones Dec. at ¶ 12. Because of "economical hardship" and "abuse," Pot-O-Gold started paying "daily rates" to keep the company "going." Shelton Depo. at p. 24, l. 6-18; *see also* Butcher Dec. at ¶ 11; Jones Dec. at ¶

3

13; Ray Depo. at p. 20, l. 9-20 (Pot-O-Gold switched to a day rate because "there was too much payroll for what business we had going on at the time").

3.  THE SUMMARY JUDGMENT STANDARD.

   A.  **Summary Judgment When the Movant Bears the Burden of Proof.**

Courts should grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(c); *Broussard v. Parish of Orleans,* 318 F.3d 644, 650 (5th Cir. 2003) (internal citations omitted). "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Brown v. City of Houston*, 337 F.3d 539, 540-41 (5th Cir. 2003). A dispute about a material fact is "genuine" if there is enough evidence for a reasonable jury to return a verdict in favor of the non-moving party. *Broussard*, 318 F.3d at 650. When deciding a motion for summary judgment, courts review all factual questions in the light most favorable to the nonmovant. *Id.*

   B.  **The Standards Governing a *Sua Sponte* Grant of Summary Judgment.**

Rule 56 is designed to facilitate prompt disposition of cases where there are no genuine issues of material fact for the court to consider. *Exxon Corp.* v. *St. Paul Fire &Marine Ins. Co.,* 129 F.3d 781, 786 (5th Cir.1997). To that end, "district courts ... possess the power to enter summary judgments *sua sponte,* so long as the losing party was on notice that she had to come forward with all of her evidence." *Celotex Corp.* v. *Catrett,* 477 U.S. 317,326 (1986). A party which seeks summary judgment is on notice that she must come forward with all of her evidence. *General Universal Systems, Inc.* v. *Lee,* 379 FJd 131,145 n. 29 (5th Cir. 2004); *British*

4

*Caledonian Airways Ltd v. First State Bank of Bedford, Tex.*, 819 F.2d 593, 595 (5th Cir.1987)(filing a summary judgment "opens the door" to grant summary judgment in favor of the non-movant.). Thus, "Rule 56 [encourages] a court, under proper conditions, to grant relief to that party which is entitled to such even if it has not been demanded." *American Home Assur. Co. v. United Space Alliance, LLC*, 378 F.3d 482, 486 (5th Cir. 2004).[1]

**4.    THE FLSA REQUIRES EMPLOYERS PAY OVERTIME UNLESS AN EXEMPTION APPLIES.**

The FLSA creates a general rule which requires employers to pay employees overtime for hours worked in excess of forty in a week. *Vela v. City of Houston*, 276 F.3d 659, 666 (5th Cir. 2001). Such hours must be paid at "one and one-half times" the employee's "regular rate." 29 U.S.C. § 207. The employer bears the burden to show any exemption to this general rule, and any such exemption is "narrowly construed" against the employer seeking to claim it. *Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388, 392 (1960); *Songer v. Dillon Res., Inc.*, 618 F.3d 467, 471 (5th Cir. 2010). Only employees who are "plainly and unmistakably within [an exemption's] terms and spirit" may be denied overtime pay. *Arnold,* 361 U.S. at 392. Applying any standard less than this "is to abuse the interpretive process and to frustrate the announced will of the people." *A.H. Phillips, Inc., v. Walling,* 324 U.S. 490, 493 (1945). If an employer fails to meet a single element of its affirmative defense, the employee is not exempt and is entitled to overtime pay. *Usery v. Associated Drugs, Inc.*, 538 F.2d 1191 (5th Cir. 1976).

**5.    THE MOTOR CARRIER ACT (MCA) EXEMPTION.**

The FLSA's overtime requirements do not apply to employees "with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service" under section 31502 of Title 49 [of the MCA]." 29 U.S.C. § 213(b)(1). The application of the

---

[1]   The *sua sponte* nature of summary judgment does not alter the standard of review. *Harken Exploration Co. v. Sphere Drake Ins. P.L.C.*, 261 F.3d 466, 477 (5th Cir. 2001).

MCA exemption to an employee "depends both on the class to which his employer belongs and on the class of work involved in the employee's job." 29 C.F.R. § 782.2(a).  The MCA exemption is applicable to drivers subject to the Secretary of Transportation's jurisdiction who are "directly affecting the safety of operation of motor vehicles on the public highways in transportation in interstate or foreign commerce within the meaning of the [MCA]." 29 C.F.R. § 782.2(a).

The MCA exemption does not apply to a driver unless he "is (or … is likely to be) called upon in the ordinary course of his work to perform, either regularly or from time to time, safety-affecting activities " of a driver in interstate transport.  *Songer*, 618 F.3d at 474 (quoting 29 C.F.R. § 782.2(b)(3).  The MCA exemption extends to drivers who have not driven in interstate commerce if the employer establishes: (1) that it has "engaged in interstate commerce"; and (2) "the driver could reasonably have been expected to make one of the [employer's] interstate runs."  *Id.*, at 475.  Thus, the nature of the employer's operations are not controlling; "the test is the nature of the transportation performed by the employees."  *Goldberg v. Faber Indus. Inc.*, 291 F.2d 232, 235 (7th Cir. 1961).

The MCA exemption does not attach, however, if "there is no possibility of the individual driver doing interstate driving or if the possibility of interstate driving is remote." *See* APPLICATION OF THE FEDERAL MOTOR CARRIER SAFETY REGULATIONS, 46 FR 37902-02, at 37903 (Jul. 23, 1981).  Courts, including the Supreme Court and the Fifth Circuit, recognize the following factors when determining whether a driver is likely to participate in interstate transportation:

6

(1) whether the driver is a member of a group of individual drivers to whom the employer indiscriminately assigns interstate routes, *Morris*, 332 U.S. at 433; *Songer*, 618 F.3d at 470; *Kimball v. Goodyear Tire & Rubber Co.*, 504 F. Supp. 544, 548 (E.D. Tex. 1980);

(2) whether the driver understands that interstate trips may be necessary, *Songer*, 618 F.3d at 475; *Flowers v. Regency Transp., Inc.*, 535 F. Supp. 2d 765, 769 (S.D. Miss. 2008);

(3) whether the drivers are assigned fixed routes; *Songer,* 618 F.3d at 475;

(4) the percentage of interstate trips out of the total number of trips completed by the employer, *Morris*, 332 U.S. at 433; *Coleman v. Jiffy June Farms, Inc.*, 324 F.Supp. 664, 670 (S.D. Ala. 1970), *aff'd* 458 F.2d 1139 (5th Cir. 1972) *cert denied*, 409 U.S. 948 (1972);

(5) whether interstate trips are a natural, integral, and inseparable part of the employer's and drivers' carrier services; *Morris*, 332 U.S. at 433.

**6.    INTERSTATE TRAVEL FOR HOUSTON PUMP TRUCK DRIVERS IS NOT LIKELY.**

**A.    No Houston Pump Truck Driver Has Ever Driven Interstate.**

No Houston Pump Truck Driver, let alone Plaintiffs, ever drove out of state. Ray Depo. at p. 16, l. 13 – p. 17, l. 1; *see also* Butcher Dec. at ¶ 9; Jones Dec. at ¶ 11. The only pump truck driver mentioned in Pot-O-Gold's motion for summary judgment that made interstate runs is Stephen Phares, who is based out of Pot-O-Gold's Hammond, Louisiana office and is not a Houston Pump Truck Driver. *See* Doc. 17-2 at p. 7; Ray Depo. at p. 17, l. 2-7. Summary judgment should be denied because neither Plaintiffs nor any other Houston Pump Truck Drivers could reasonably have been expected to make interstate runs for Pot-O-Gold.

**B.    Volunteers or Dedicated Long-Haul Drivers Handle Pot-O-Gold's Interstate Runs.**

Drivers who are never involved with interstate transportation may nevertheless be exempt when they are members of a class of individual drivers to whom the employer indiscriminately

assigns interstate trips.  *Morris*, 332 U.S. at 433; *Songer*, 618 F.3d at 470; *Kimball*, 504 F. Supp. at 548.  However, an employer must do more than just allege that interstate trips are assigned indiscriminately – it must show that because of its assignment procedure, the driver was likely to receive interstate driving assignments.  *McGee v. Corporate Express Delivery Sys.*, 2003 WL 22757757, at *6 (N.D. Ill. Nov. 20, 2003).  Drivers employed by employers who use a non-random assignment system do not qualify for the exemption.  *See Kimball*, 504 F. Supp. at 548 (a seniority system does not qualify).

When Pot-O-Gold needs an interstate run completed (at a location that has actually *had* an interstate run), it sends a volunteer.  Ray Depo at p. 38, l. 22 – p. 39, l. 5; Derr Depo. at p. 22, l. 8-18; *see also* Shelton Depo. at p. 29, l. 23 – p. 30, l. 23; Doc. 17-7, Phares Dec. at p. 2.  If there were no volunteers, Pot-O-Gold would ask a driver who has a slow route.  Ray Depo. at p. 39, l. 6 – 17; Shelton Depo. at p. 30, l. 13-23.  Next, Pot-O-Gold would consider the quality of the driver's work.  Ray Depo. at p. 39, l. 6 – p. 40, l. 5.  Pot-O-Gold would also consider a driver's availability, including his family situation, before asking him to make an interstate run.  Ray Depo. at p. 40, l. 6-18.  However, because Pot-O-Gold has *never* had a shortage of volunteer drivers, it has *never* made an interstate assignment.  Ray Depo. at p. 40, l. 22 – p. 41, l. 16.

Further, Pot-O-Gold has dedicated long-haul drivers who make interstate runs.  *See* Jones Dec. at ¶ 3; *see also* Ray Depo. at p. 41, l. 3-23.  Large runs are handled by a "hotshot" company.  Shelton Depo. at p. 26, 14-19.  Houston Pump Truck Drivers, on the other hand, such as Plaintiffs, cover Pot-O-Gold's permanent toilet service routes in the Houston area.  Jones Dec. at ¶ 3; Butcher Dec. at ¶ 3; Derr Depo. at p. 27, l. 24 – p. 28, l. 9; p. 30, l. 8 - 20.

In *McComb* and *Songer*, even the drivers who had not yet performed interstate trips themselves were exempt because there was a realistic chance their number could have turned up

on the roulette wheel. Here, Houston Pump Truck Drivers have never driven out of state because Pot-O-Gold does not have a wheel.

### C. Pot-O-Gold Told Plaintiffs They Would Never Drive Interstate.

When considering whether a driver is a part of a class of drivers that is likely to receive an out of state assignment, one of the factors courts consider is whether the driver is aware he may be required to drive interstate runs. *Songer*, 618 F.3d at 475; *Flowers*, 535 F. Supp. 2d at 769. Pot-O-Gold specifically told Plaintiffs they would never drive interstate, even if there were storms or disasters. Butcher Dec. at ¶ 3; Jones Dec. at ¶ 3.

Defendants' evidence is not to the contrary. Henry Ray, the supervisor who claims he talked to Plaintiffs about this, testifies in his affidavit that he informed Jones: "we were a Natural Disaster Response Company. And would be Required to go if need [sic]". Doc. 17-5, Affidavit of Henry Ray, at p. 1. Using similar language, Ray again failed to mention interstate trips may be required when he allegedly talked to Butcher. *Id*. at p. 2. On his third swing, Ray struck out:

```
25  Q   Okay. What did you tell Ed about -- and Dana
 1  about the company policy about traveling out of state?
 2     A   Told them we was a national disaster relief,
 3  and if a storm or hurricane come up that you may be
 4  asked to get out of town.
 5     Q   Okay. Did you tell them anything else?
 6     A   I don't remember way back then. I just know
 7  they was told.
```

Ray Depo. at p. 30, l. 25 – p. 31, l. 7 (emphasis added). At the very least, there is a fact issue as to whether Pot-O-Gold informed Plaintiffs they may be required to drive interstate runs.

### D. Houston Pump Truck Drivers Are Assigned Fixed, Intrastate Routes.

The MCA exemption does not apply to drivers who have fixed, intrastate routes assigned to them because there is no reasonable likelihood that they would travel interstate. *Goldberg*, 291 F.2d at 245; s*ee also Songer,* 618 F.3d at 475 (drivers exempt, in part, because they did not

9

have dedicated routes and the routes changed on a daily basis). Further, if local delivery drivers qualified for the MCA exemption, the separate "local delivery driver" exemption under the FLSA would be superfluous. *See* 29 U.S.C. § 213(11).

Houston Pump Truck Drivers are assigned fixed, intrastate toilet service routes. Butcher Dec. at ¶¶ 4-6, 9; Jones Dec. at ¶¶ 4-7; Ray Depo. at p. 22, l. 11 – p. 23, l. 5; Derr Depo. at p. 19, l. 12-13; Shelton Depo. at p. 43, l. 2-24. Pot-O-Gold's permanent toilet operations in Houston are substantial enough that Pot-O-Gold would be hard-pressed to let a Houston Pump Truck Driver volunteer for interstate trips. *See* Derr Depo. at p. 27, l. 24 – p. 28, l. 9; p. 30, l. 8-20; Shelton Depo. at p. 33, l. 3-9.

Houston Pump Truck Drivers are similar to the meat scrap drivers in *Goldberg*. *Goldberg*, 291 F.2d at 234. The employer was a meat scrap processing company with ten processing plants, four of which were in Illinois. *Id*. at p. 234. Fifteen of its twenty meat scrap drivers drove fixed, intrastate routes, picking up scraps from restaurants, butchers, packing plants, and others along their routes. *Id*. The remaining five drove interstate routes. *Id*. The fifteen intrastate meat scrap drivers were not exempt because, as fixed, intrastate route drivers, it was not likely they would share in the employer's interstate trips. *Id*. at 235.

### E. Pot-O-Gold Failed To Present Evidence That Its Interstate Trips Are More Than *De Minimis*.

When an employer's percentage of interstate trips is *de minimis*, the MCA exemption does not apply. *Jiffy-June Farms, Inc.*, 324 F.Supp. 664 (0.23% of all deliveries were interstate); *Kimball*, 504 F.Supp. at 548 (0.17% of all trips were interstate). The employer bears the burden of proving that it has engaged in interstate commerce that is more than *de minimis*. *Flowers*, 535 F.Supp.2d at 767.

10

In *Morris*, only 4% of the employer's trips were interstate, but only two drivers in the pool of forty-two never received an interstate assignment. *Morris,* 332, U.S. at 427. One or more interstate trips were made each week, and twenty-four percent of the drivers made these interstate trips each week. *Id*. at 433. The two *Morris* drivers who did not travel interstate were nevertheless exempt because they were members of a class of drivers to whom interstate runs were indiscriminately assigned on a weekly basis. *Id*. In *Kimball*, the drivers were not exempt because twenty-nine of the thirty-nine drivers never drove interstate, only 0.14% of all trips were interstate, and interstate trips only occurred, on average, once every three weeks. *Kimball*, 504 F.Supp. at 547-48.

Here, 0% of Houston Pump Truck Drivers have participated in interstate transportation. Ray Depo. at p. 16, l. 13 – p. 17, l. 1; *see also* Butcher Dec. at ¶ 9; Jones Dec. at ¶ 11. Erin Shelton's affidavit seems to suggest an interstate aspect to Pot-O-Gold's business, generally. *See* Doc. 17-4, Affidavit of Erin Shelton, at p. 2. However, Shelton provides little information of substance on the percentage of pump truck trips that were interstate trips or their frequency. *Id*. Instead, she provides information regarding the percentage of revenue generated from disaster relief work during 2008-2010. *Id*. She fails to establish the connection, if any, between disaster relief revenue and whether Plaintiffs, the class of drivers to which they belonged, or any other drivers, were likely to make interstate runs. *Id*. Pot-O-Gold's "noticeable absence of proof" on this issue precludes summary judgment. *See Flowers* 535 F.Supp. 2d at 768.

Further, the inference to draw in Plaintiffs' favor based on Shelton's affidavit is that Pot-O-Gold's interstate trips accounted for "less than 1%" of all trips in 2009 (the year Plaintiffs were employed). Shelton Affidavit at p. 2; Doc. 17-2 at p. 8. However, interstate transportation

11

percentages less than 1% do not qualify for the MCA exemption. *See Jiffy June Farms, Inc.*, 324 F.Supp. 664; *Kimball*, 504 F.Supp. at 548.

### F. Interstate Transportation Is Not an Integral and Inseparable Part of Pot-O-Gold's and Plaintiffs' Driving.

As described above, Houston Pump Truck Drivers, including Plaintiffs, never participated in interstate transportation. Nor were they likely to participate in interstate transportation because Pot-O-Gold: (1) does not have an indiscriminate assignment system; (2) uses a separate class of long-haul drivers for interstate transportation; and (3) never told Plaintiffs they might have to participate in interstate transportation. Instead, Houston Pump Truck Drivers are assigned fixed, intrastate routes associated with Pot-O-Gold's permanent operations in the Houston area. Accordingly, Houston Pump Truck Drivers are separate from Pot-O-Gold's interstate disaster relief efforts and are not exempt under the MCA.

## 7. THE COURT SHOULD ENTER SUMMARY JUDGMENT AGAINST POT-O-GOLD WITH RESPECT TO ITS AFFIRMATIVE DEFENSE OF EXEMPTION.

### A. Pot-O-Gold Claims There Are No Genuine Issues of Fact and Was Obligated to Come Forward with All Its Evidence.

The decision whether an employee is exempt from the FLSA's overtime provisions is primarily a question of fact; however, the ultimate decision whether the employee is exempt is a question of law. *Lott v. Howard Wilson Chrysler-Plymouth, Inc.,* 203 F.3d 326, 330-31 (5th Cir. 2000). However, in this case, Pot-O-Gold claims there is "no genuine dispute as to any material fact exists that would preclude a finding that the [MCA] precludes Plaintiffs' [overtime] claims." *See* Doc. 17-2 at pp. 9-10. By seeking summary judgment, Pot-O-Gold willingly accepted the burden of establishing each element of its exemption as a matter of law. In so doing, Pot-O-Gold was under an obligation to put forth all the evidence supporting its position. *General Universal*

*Systems*, 379 F.3d at 145, n. 29; *British Caledonian Airways Ltd*, 819 F.2d at 595.  Thus Pot-O-Gold "put its best foot forward."  *Id*.

      **B.**     **Pot-O-Gold Failed to Demonstrate Plaintiffs Were Likely To Participate In Interstate Transportation.**

Pot-O-Gold was required to prove Plaintiffs were called upon, or were likely to be called upon, to participate in interstate transportation.  *Songer*, 618 F.3d at 474 (quoting 29 C.F.R. § 782.2(b)(3).  The only evidence Pot-O-Gold offers for this is that Plaintiffs were told they may have to make interstate runs.  *See* Doc. 17-2 at pp. 8-9.

Merely telling drivers they may have to make interstate runs is insufficient because the "character of the activities" actually performed by the drivers determine whether they are exempt.  *Songer,* 618 F.3d at 473-74 (citations and internal quotations omitted).  Thus, an employer simply cannot avail itself of the MCA exemption based on what it says.  *Id*.

Instead, Pot-O-Gold was required to demonstrate how Plaintiffs' involvement with interstate transportation was possible.  As discussed above, Plaintiffs, nor the class of drivers to whom they belonged – the Houston Pump Truck Drivers – were ever called upon to drive interstate.  *Supra*.  More importantly, Pot-O-Gold did not demonstrate how Plaintiffs were part of the class of its "<u>other</u> drivers [who] regularly engage in interstate transport in response to certain events such as hurricanes affecting the Gulf South states and other disasters."  *See* Doc. 17-2 at p. 7 (emphasis added).

Even if Pot-O-Gold had done so, their exemption defense would still fail because there is no evidence that if Plaintiffs were in the same group as these other drivers, they would have received interstate assignments.  This is because Pot-O-Gold uses a volunteer-plus-conditions assignment system – not an indiscriminate one.  Because Pot-O-Gold has not met its burden,

13

summary judgment should be granted in Plaintiffs' favor that they were non-exempt. *Madison v. Resources for Human Development, Inc.*, 233 F.3d 175, 181 (3rd Cir. 2000).

**8. THE MCA DOES NOT APPLY IN ANY WEEK A VEHICLE UNDER 10,001 POUNDS IS INVOLVED, EVEN IF MCA COVERAGE EXISTS.**

Several recent acts of Congress have impacted the scope of the MCA exemption found in 13(b)(1). *See* Caroline Brown & John Thompson, *Congress Amends Motor Carrier Exemption: Both Helps and Hurts Employers*, Labor Letter (Sept. 2008) (describing the SAFETEA-LU amendments to the MCA and the SAFETEA-LU Technical Corrections Act of 2008).[2] Under the current version of the law, employees who drive vehicles weighing more than 10,000 pounds and others weighing 10,000 pounds (or less) are entitled to overtime. *Id.* This is true even though employees driving in such "hybrid fleets" are subject to the Secretary of Transportation's jurisdiction and would have been exempt under the prior "four month rule." Department of Labor, Field Assistance Bulletin No. 2010-2 (Nov. 4, 2010) (FAB 2010-2).[3] Thus, if Plaintiffs drove trucks weighing 10,000 pounds or less for any part of the workweek, they are not exempt for that week and are entitled to overtime. *Id.*

Butcher and Jones normally drove large pump trucks, but they also drove a Chevy 1500 pick up truck for Pot-O-Gold. Butcher Dec. at ¶ 8; Jones Dec. at ¶ 10. This truck is a "1-ton" truck. Ray Depo. at p. 37, l. 8-19. Accordingly, Plaintiffs are non-exempt during the weeks they drove this truck, even if they were covered by the MCA.

---

[2]  Available at: *http://www.laborlawyers.com/showarticle.aspx?Congress-Amends-Motor-Carrier-Exemption-Both-Helps-and-Hurts-Employers&Ref=list&Type=1119&Cat=5023&Show=10839*

[3]  Available at: http://www.dol.gov/whd/FieldBulletins/FAB2010_2.pdf

**9.   CONCLUSION**

Pot-O-Gold failed to establish its affirmative defense of exemption under the MCA. Plaintiffs were simply not the kind of drivers who were likely to participate in interstate transportation. Accordingly, Pot-O-Gold's Motion for Summary Judgment should be denied.

Respectfully submitted,

**BRUCKNER BURCH PLLC**

/s/ David I. Moulton

By: _____
David I. Moulton
*Attorney-in-Charge for Plaintiffs*
State Bar No. 24051093
S.D. Tex. No. 608063
1415 Louisiana Street, Suite 2125
Houston, Texas 77002
(713) 877-8788-Telephone
(713) 877-8065-Facsimile

**CERTIFICATE OF SERVICE**

A copy of this document was served on Defendant via the Court's ECF system on the date stamped above.

/s/ David I. Moulton
_____
David I. Moulton