UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DANA KEITH BUTCHER and EDWARD JONES, <br>     *Plaintiffs*, <br><br> v. <br><br> TSWS, INC. d/b/a POT-O-GOLD, <br>     *Defendant*. | CIVIL ACTION NO. 4:10-CV-01376 |

## MEMORANDUM AND ORDER

This Fair Labor Standards Act case is before the court on the defendant TSWS, Inc. d/b/a Pot-O-Gold's motion for summary judgment based on the Motor Carrier Act exemption.[1] The motion is denied.

### Background[2]

Pot-O-Gold is in the business of renting portable toilets and roll-off construction dumpsters, and performing commercial waste removal services and related disaster relief work.[3] Pot-O-Gold has offices in Florida, Alabama, Louisiana and Texas, and advertises itself as the "Gulf Coast Leader" in commercial waste removal and disaster relief services.[4] Because it is a small business, and a significant amount of its revenue involves work that requires the interstate transport of equipment

---

[1] Dkt. 17.

[2] The following facts are assumed as true for purposes of this motion only. The court will draw, as it must, all inferences arising from the facts in the light most favorable to the nonmoving party. *Hotard v. State Farm Fire & Cas. Co.*, 286 F.3d 814, 817 (5th Cir. 2002).

[3] Flynn Aff. 1 (Dkt. 17-3); Shelton Aff. 2 (Dkt. 22-1).

[4] Flynn Aff. 1–2 (Dkt. 17-3).

and supples, its offices must share its sixty (60) drivers, trucks, and rental equipment.[5] It is for this reason that Pot-O-Gold asserts that since 2005 it has informed all newly hired drivers that they may be required to drive trucks and transport equipment across state lines if disaster strikes in another state.[6]

Plaintiffs Dana Keith Butcher and Edward Jones were employed by Pot-O-Gold as pump truck drivers[7] for several months in 2009.[8] These drivers are each assigned a pump truck, custom-fitted with a tank, vacuum pump system, and portable toilet rack.[9] Plaintiffs' duties were to clean, maintain, and empty portable toilets along specific fixed routes in Houston, Texas and surrounding areas.[10]

The parties dispute whether Butcher and Jones were notified that they may be required to travel across state lines. Henry Ray, a manager in Pot-O-Gold's Houston office, testified that he told Butcher and Jones that they may be asked to make interstate runs if a storm hit outside of Texas.[11] However, contrary to Ray's testimony, Butcher and Jones claim that their supervisor Lenny Horn

---

[5] *Id.* at 2.

[6] *Id.* at 3–4; Ray Aff. 3–4 (Dkt. 17-5); Bridges Aff. 2 (Dkt. 17-6); Phares Aff. 2 (Dkt. 17-7); Braase Aff. 1 (Dkt. 17-8); Williams Aff. 1 (Dkt. 17-9).

[7] Although Butcher and Jones were employed as pump trucks drivers, Jones claims he drove a 1-ton truck for one week in October 2009. Jones Aff. 2 (Dkt. 26-2); Ray Dep.37:8–38:6 (Dkt. 26-5).

[8] Butcher was employed at Pot-O-Gold from June to December of 2009. (Dkt. 22-4, at 3). Jones was employed from February 22 through November 2, 2009. (Dkts. 22-5, at 3); Jones Aff. 1 (Dkt. 26-2).

[9] Shelton Aff. 3 (Dkt. 22-1).

[10] Ray Aff. 1–2 (Dkt. 17-5); (Dkts. 22-4, at 12, 22-5, at 12); Butcher Aff. 1 (Dkt. 26-1); Jones Aff. 1 (Dkt. 26-2); Derr Dep. 19:12–13, 27:24–28:3 (Dkt. 26-3); Shelton Dep. 42:20–43:19 (Dkt. 26-4); Ray Dep. 22:11–13, 24:18–25:6) (Dkt. 26-5).

[11] Ray Dep. 30:25–31:4 (Dkt. 26-5).

told them they would never be required to drive out of state.[12] Moreover, Pot-O-Gold managers Leonard Derr and Erin Shelton testified that certain pump truck drivers would be required to stay in the Houston area to service portable toilets even if there was a disaster outside of Texas.[13]

Regardless of whether they could be required to travel interstate, it is undisputed that neither Butcher nor Jones drove pump trucks outside of Texas during their employment with Pot-O-Gold.[14] In practice, when interstate transport jobs arose, other drivers volunteered to do them because these jobs paid more.[15] If there were not enough volunteers,[16] Pot-O-Gold would assign the interstate transport job to a driver based on the driver's "quality of work" and availability.[17]

---

[12] Butcher Aff. 1 (Dkt. 26-1); Jones Aff. 1 (Dkt. 26-2).

[13] Derr Dep. 30:18–20 (Dkt. 26-3); Shelton Dep. 33:3–9 (Dkt. 26-4).

[14] Ray Dep. 16:13–17:1 (Dkt. 26-5). Phillip Martinez, a Houston pump truck driver beginning February 2010, testified that he transported comfort stations and shower stations to Louisiana in June of 2010. Martinez Aff. 1 (Dkt. 27-1); Derr Dep. 37:14–24 (Dkt. 27-6). Also, Ray (a manager in the Houston office) testified he drove pump trucks occasionally, and traveled to Louisiana, Kentucky and Florida. Butcher Dep. 42:22–43:12; (Dkt. 27-2); Jones Dep. 76:10–25 (Dkt. 27-3); Ray Dep. 29:3–9 (Dkt. 27-5).

[15] Phares Aff. 2 (Dkt. 17-7); Derr Dep. 22:8–18 (Dkt. 26-3); Shelton Dep. 23:1–9, 29:23–30:10 (Dkt. 26-4); Ray Dep. 38:22–39:5 (Dkt. 26-5). Other summary judgment evidence indicates Pot-O-Gold may have had drivers dedicated to interstate transport. Jones Aff. 1 (Dkt. 26-2). For example, Steven W. Phares, a pump truck driver in the Louisiana office testified that he traveled to Alabama and Florida for disaster relief work after the BP oil spill, and transported portable toilets to Alabama and Mississippi. Phares Aff. 1 (Dkt. 17-7); Ray Dep. 17:2–7 (Dkt. 26-5). He did not indicate whether he was assigned these jobs or volunteered for them.

[16] Houston manager Henry Ray testified that the Louisiana office has never had a shortage of volunteers for intestate jobs. Ray Dep. 40:22–41:9 (Dkt. 26-5).

[17] Shelton Dep. 29:23–30:23 (Dkt. 26-4); Ray Dep. 39:6–40:21 (Dkt. 26-5).

On occasion, Jones also assembled and repaired portable toilets in a storage yard.[18] Originally when Pot-O-Gold opened its Houston office in response to Hurricane Ike, it transported its portable toilets to Houston from its other offices.[19] Pot-O-Gold also purchases portable toilets from Five Peaks Technology (a Michigan business) and Satellite Industries (a Minnesota business), and has the parts shipped to the Florida office.[20] The portable toilets are either used in Florida, or the parts are transported to Pot-O-Gold's yards in Alabama or Texas for assembly and rental to customers.[21] Portable toilets are returned to the storage yards after rental.[22] To accommodate customers' orders, Pot-O-Gold shifts its inventory among its yards in various states, and also orders additional portable toilets.[23] Portable toilets have also been ordered to generally increase a yard's inventory, and not in response to a particular customer's order.[24]

Initially, Pot-O-Gold paid Butcher and Jones hourly, including overtime pay for hours worked over forty per week.[25] However, business began slowing down,[26] and Pot-O-Gold determined Butcher and Jones were exempt from the FLSA's overtime requirements under the Motor Carrier

---

[18] Jones Aff. 2 (Dkt. 26-2). Contrary to Jones's testimony, Pot-O-Gold manager Erin Shelton testified that Pot-O-Gold's portable toilet vendors' employees assembled the toilets in Pot-O-Gold's storage yards. (Dkt. 26-4, at 9).

[19] Derr Dep. 19:21–20:4 (Dkt. 27-6).

[20] Shelton Aff. 3 (Dkt. 22-1).

[21] *Id.*; Shelton Dep. 38:11–25 (Dkt. 26-4).

[22] Shelton Dep. 34:24–35:6 (Dkt. 28-2).

[23] Shelton Aff. 3 (Dkt. 22-1); Derr Dep. 45:2–46:21 (Dkt. 27-6).

[24] Derr Dep. 47:4–16 (Dkt. 27-6); Shelton Dep. 34:12–23 (Dkt. 28-2).

[25] Butcher Aff. 2 (Dkt. 26-1); Jones Aff. 3 (Dkt. 26-2); Shelton Dep. 23:10–15 (Dkt. 26-4).

[26] Shelton Dep. 24:6–10 (Dkt. 26-4); Ray Dep. 20:7–18 (Dkt. 26-5).

Act exemption.[27] In September of 2009 it began paying them $120–150 daily, without regard to the hours they worked.[28] Butcher and Jones allegedly complained to the Texas Workforce Commission about Pot-O-Gold's compensation practices.[29] Ultimately, Pot-O-Gold determined that Butcher and Jones were violating various workplace policies and not servicing the portable toilets on their assigned routes, and terminated them at the end of 2009.[30]

On April 26, 2010, Butcher and Jones filed suit against Pot-O-Gold, claiming it violated the Fair Labor Standards Act by failing to pay them overtime and for terminating them in retaliation for complaining to the Texas Workforce Commission.[31] On May 4, 2011, Pot-O-Gold filed this motion for summary judgment asserting an exemption under the Motor Carrier Act, 29 U.S.C. § 13(b)(1).[32]

## Standard of Review

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact" and therefore judgment is appropriate as a matter of law. Fed. R. Civ. P. 56(c). A dispute is "genuine" if the evidence could lead a reasonable jury to find for the non-movant. *In re Segerstrom*, 247 F.3d 218, 223 (5th Cir. 2001). "An issue is material if its resolution could affect the outcome of the action." *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d

---

[27] Shelton Aff. 3 (Dkt. 22-1).

[28] Bridges Aff. 4 (Dkt. 17-6); Butcher Aff. 2 (Dkt. 26-1); Jones Aff. (Dkt. 26-2); Shelton Dep. 24:6–18 (Dkt. 26-4).

[29] This complaint is not in the record.

[30] Ray Aff. 2–3 (Dkt. 17-5).

[31] Dkt. 1.

[32] Dkt. 17.

5

303, 310 (5th Cir. 2002). "[I]f the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

## Analysis

Generally, the Fair Labor Standards Act (FLSA) requires employers to pay its employees one and half times the employee's regular rate for hours worked over forty in one workweek. 29 U.S.C. § 207(a)(2). However, certain employers and employees are exempt from this overtime requirement. *See id.* § 213(b). Exemptions under the FLSA are construed narrowly against the employer, and the employer bears the burden to establish a claimed exemption. *Songer v. Dillon Resources, Inc.*, 618 F.3d 467, 471 (5th Cir. 2010).

Relevant to this case, the FLSA's overtime requirements do not apply to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49." 29 U.S.C. § 213(b)(1). FLSA regulations explain:

> The exemption of an employee from the hours provisions of the Fair Labor Standards Act under section 13(b)(1) depends both on the class to which his employer belongs and on the class of work involved in the employee's job. The power of the Secretary of Transportation to establish maximum hours and qualifications of service of employees, on which exemption depends, extends to those classes of employees and those only who: (1) Are employed by carriers whose transportation of passengers or property by motor vehicle is subject to his jurisdiction under section 204 of the Motor Carrier Act [(49 U.S.C. § 31502)] . . . , and (2) engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act.

29 C.F.R. § 782.2(a).

1.      **Carrier-Employer Subject to the Secretary of Transportation's Jurisdiction**

As set forth above, the first prong of the Motor Carrier Act exemption requires the employer to be a "carrier whose transportation of . . . property by motor vehicle is subject to" the Secretary of Transportation's jurisdiction. 29 C.F.R. § 782.2(a). "The Secretary of Transportation may prescribe requirements for . . . qualifications and maximum hours of service of employees of . . . a motor private carrier, when needed to promote safety of operation." 49 U.S.C. § 31502. A "motor private carrier" includes a person "transporting property by motor vehicle when . . . the property is being transported for sale, lease, rent, or bailment or to further a commercial enterprise." 49 U.S.C. §§ 13102(15)(C); 31501(2). In addition, the carrier "must be engaged in interstate commerce" to be subject to the Secretary's jurisdiction. *Songer v. Dillon Resources, Inc.*, 618 F.3d 467, 472 (5th Cir. 2010).

Butcher and Jones do not dispute that Pot-O-Gold meets the first prong of the Motor Carrier Act exemption. Indeed, Pot-O-Gold purchases portable toilets from vendors in Michigan and Minnesota, and transports the parts to yards in Alabama and Texas for rent to customers. Pot-O-Gold also travels across state lines for disaster relief work. Pot-O-Gold also has been issued USDOT number 1344667 from the Department of Transportation, and advertises itself as the "Gulf Coast Leader" in commercial waste removal and disaster relief services. *See Baez v. Wells Fargo Armored Serv. Corp.*, 938 F.2d 180, 182 (11th Cir. 1991) (a Department of Transportation permit indicates jurisdiction has already been exercised); *Brennan v. Schwerman Trucking Co. of Va., Inc.*, 540 F.2d 1200, 1204 (4th Cir. 1979) (that a carrier holds itself out as an interstate motor carrier is evidence of the Secretary's jurisdiction). In sum, Pot-O-Gold has satisfied its burden to show that it meets the first prong of the Motor Carrier Act exemption.

**2.     Employees' Activities Directly Affecting Safety of Operation of Motor Vehicles in Transporting Property in Interstate Commerce**

The second prong of the Motor Carrier Act exemption requires that an employee "engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of . . . property in interstate . . . commerce within the meaning of the Motor Carrier Act." 29 C.F.R. § 782.2(a). It is undisputed that as drivers, Butcher and Jones directly affected the safety of operation of motor vehicles. *See Morris v. McComb*, 332 U.S. 422, 430 (1947); *Songer v. Dillon Resources, Inc.*, 618 F.3d 467, 473 (5th Cir. 2010); 29 C.F.R. § 782.2(b)(1) (citing cases). The major source of contention in the summary judgment papers is whether Butcher and Jones were engaged in the transport of property in interstate commerce. Pot-O-Gold advances two theories by which it asserts Butcher and Jones engage in such interstate commerce, even though their assigned routes were solely within Texas.

**a.     Possibility of Interstate Trips by Drivers**

Pot-O-Gold first argues that because it travels across state lines to assist in disaster relief efforts, and notifies its drivers that they may be called upon for these efforts, Butcher and Jones should be deemed to transport property in interstate commerce.

In *Morris v. McComb*, 332 U.S. 422 (1947), for example, the employer operated a general cartage business, mainly transporting steel within Michigan, but 4% of its business involved transporting miscellaneous freight in interstate commerce. These interstate trips were "shared indiscriminately by the drivers and . . . mingled with the performance of other like driving services rendered by them otherwise than in interstate commerce." 332 U.S. at 433. After examining the driver's records, the court found two drivers (out of 43) who did not make any interstate trips during the time period at issue. However, the Interstate Commerce Commission (predecessor to the

Department of Transportation) was held to have jurisdiction over the "entire classification of [the employer's] drivers," reasoning that "[f]rom the point of view of safety in interstate commerce, the hazards are not distinguishable from those which would be presented if each driver drove 4% of his driving time each day in interstate commerce." *Id.* at 434. Thus, the drivers were exempt from the FLSA's overtime requirement.

More recently in *Songer v. Dillon Resources, Inc.*, 618 F.3d 467 (5th Cir. 2010), the plaintiff-employees were assigned to drive commercial trucks for the defendant-employers, transporting construction materials within Texas. Some of the drivers transported aggregate (e.g., sand, gravel, crushed rock) across state lines. No driver had a dedicated route. Rather, the drivers were assigned routes from a dispatch service before the start of their shifts. Although certain factors were taken into account when assigning routes (e.g., availability and customer requirements), the assignments were distributed indiscriminately—"i.e., any driver could be called upon at any time to make an interstate or intrastate trip." 618 F.3d at 470. If a driver refused an assignment, he could be terminated. In its analysis of the second prong of the Motor Carrier Act exemption, the court first dismissed the plaintiffs' argument that the defendant-employer must prove that each driver transported property across state lines, citing *Morris*, 332 U.S. 422. In addition, the court discussed the relevant regulations, concluding that "if drivers can be reasonably expected to perform interstate transport, the MCA exemption applies." 618 F.3d at 474. Since many drivers testified that they understood they would have to make out-of-state trips during their employment, and because route assignments changed on a daily basis and were indiscriminately given, the court concluded that any driver could have been given an interstate trip, and thus the plaintiff-employees fell under the Motor Carrier Act exemption.

*Morris* and *Songer* are distinguishable from this case. Preliminarily, the summary judgment evidence raises a fact issue as to whether the interstate assignments were given indiscriminately—"i.e., whether any driver could be called upon to make an interstate . . . trip." *Songer*, 618 F.3d at 470. When an interstate transport job arose, Pot-O-Gold management asked for volunteers. The summary judgment evidence does not show any instance where there were not enough volunteers and the job had to be assigned to a driver. To the contrary, one manager testified that he never had a shortage of volunteers. Because it is not clear from the summary judgment evidence that interstate routes were actually assigned or distributed to drivers, it cannot be proven "beyond peradventure" that *any* driver could have been called for an interstate trip. *See Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

Moreover, Pot-O-Gold has not established that Butcher and Jones could reasonably be expected to perform interstate transport. Even if a job had to be assigned, Butcher and Jones were already responsible for specific fixed routes in Houston, Texas and the surrounding area. Contrary to a less-senior manager's testimony, Butcher and Jones claim that Houston manager Lenny Horn told them they would never be required to drive out of state. Moreover, Pot-O-Gold managers Leonard Derr and Erin Shelton testified that some pump truck drivers would be required to stay in the Houston area to service these routes even if there was a disaster outside of Texas. Thus, *Morris* and *Songer* are factually distinguishable from this case, and thus do not subject Butcher and Jones to the Motor Carrier Act exemption.

### b. Intrastate Delivery of Goods in Interstate Commerce

Alternatively, Pot-O-Gold argues that because it purchases portable toilets from out-of-state vendors, and these toilets are subsequently transported to customers by Butcher and Jones (and other pump truck drivers), they transport property in interstate commerce.

In support of this argument, Pot-O-Gold cites *Walling v. Jacksonville Paper Co.*, 317 U.S. 564 (1945)—a case analyzing whether an employee is covered under the FLSA. However, FLSA regulations have warned against equating the interstate commerce requirement of the Motor Carrier Act exemption with the FLSA's requirement that an employee be engaged in interstate commerce. 29 C.F.R. § 782.7(b)(1) ("Since the interstate commerce regulated under the two acts is not identical . . . , such transportation may or may not be considered also a movement in interstate commerce within the meaning of the Motor Carrier Act."). FLSA regulations regarding the Motor Carrier Act exemption expressly defer to rulings of the Department of Transportation (formerly issued by the Interstate Commerce Commission) on the scope of the Act:

> The Interstate Commerce Commission held that transportation confined to points in a single State from a storage terminal of commodities which have had a prior movement by . . . motor . . . from an origin in a different State is not in interstate or foreign commerce within the meaning of part II of the Interstate Commerce Act if the shipper has no fixed and persisting transportation intent beyond the terminal storage point at the time of shipment. See Ex parte No. MC-48 (71 M.C.C. 17, 29). The Commission specifically ruled that there is not fixed and persisting intent where: (i) At the time of shipment there is no specific order being filled for a specific quantity of a given product to be moved through to a specific destination beyond the terminal storage, and (ii) the terminal storage is a distribution point or local marketing facility from which specific amounts of the product are sold or allocated, and (iii) transportation in the furtherance of this distribution within the single State is specifically arranged only after sale or allocation from storage.

*Id.* § 782.7(b)(2).

Preliminarily, Pot-O-Gold has put forth no evidence that either Butcher or Jones delivered portable toilets during their employment.[33] But even if there was evidence that Butcher and Jones delivered toilets originally from its Florida office, summary judgment evidence shows that at least some of the time, portable toilets (or their parts) would be shipped to a storage yard in Texas merely to increase the yard's inventory, not in response to a customer's order. This evidence indicates that the storage yard is a "distribution point" for portable toilet rentals in Houston that occur after the portable toilets are transported to the yard. Thus, the summary judgment evidence creates a fact issue as to whether Pot-O-Gold had a "fixed and persisting transportation intent beyond the terminal storage point at the time of shipment." *Id.* Pot-O-Gold is not entitled to summary judgment on its second theory.

In sum, Pot-O-Gold has failed to establish as a matter of law that it is exempt from the FLSA under the Motor Carrier Act exemption.

### **Conclusion**

Accordingly, Pot-O-Gold's motion for summary judgment (Dkt. 17) is denied.

Signed at Houston, Texas on August 25, 2011.

                                                      Stephen Wm Smith
                                          United States Magistrate Judge

---

[33] *Cf.* Martinez Aff. 1 (Dkt. 27-1) (affidavit of a pump truck driver hired after Butcher and Jones were terminated, who transported a comfort station to Louisiana).